UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FELIPE MENDEZ, JR.,

Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

Defendants.

**1:17-cv-00555-LJO-MJS (PC)**

**ORDER FINDING COGNIZABLE EIGHTH AMENDMENT CLAIMS AGAINST DEFENDANTS GHOTRA, AWAD, RIVERA, MENDOZA, LAKE, LOZANO, MARLOW, CISNEROS, AMOS, QUINTERO, AND GRAMM**

**(ECF No. 21)**

**FINDINGS AND RECOMMENDATIONS TO DISMISS PLAINTIFF'S NON-COGNIZABLE CLAIMS AGAINST DEFENDANTS LOZANO, LAKE, MENDOZA, RIVERA, AWAD, GHOTRA, AND UNITED STATES OF AMERICA**

**(ECF No. 21)**

**FOURTEEN DAY OBJECTIONS DEADLINE**

Plaintiff is a prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA").

On July 11, 2017, the Court screened Plaintiff's first amended complaint and found it stated cognizable Eighth Amendment claims against Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, and Gramm. (ECF No. 11.) Plaintiff was directed to file either a second amended complaint or a notice of willingness

1

to proceed on his cognizable claims only. After first seeking an extension of time in which to file his second amended complaint, on September 13, 2017 Plaintiff filed a notice of willingness to proceed on his cognizable claims only. (ECF No. 16.)

On September 25, 2017, Plaintiff filed a request to withdraw his notice of willingness to proceed (ECF No. 17) and a request for a sixty day extension of time to file a second amended complaint (ECF No. 18.) On September 26, 2017, the Court granted Plaintiff's request to withdraw his notice of willingness to proceed, as well as a sixty-day extension in which to file his second amended complaint. (ECF No. 19.)

On November 27, 2017, Plaintiff filed his second amended complaint. (ECF No. 21.) That complaint is now before the Court for screening. For the reasons outlined below, the Court finds the following cognizable claims for relief:

(1)     Eighth Amendment deliberate indifference claims against Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, Quintero, and Gramm;

(2)     First Amendment retaliation claims against Defendants Quintero, Gramm, Amos, Cisneros, and Marlow; and

(3)     FTCA medical malpractice and negligence claims against the United States of America.

For the reasons explained below, the Court finds that Plaintiff fails to state sufficient facts to support the following claims:

(1)     First and Eighth Amendment claims against Defendant United States of America through the actions of its employees, Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, Quintero, and Gramm.

(2)     First Amendment retaliation claims against Defendants Lozano, Lake, Mendoza, Rivera, Awad, and Ghotra;

(3)     First Amendment retaliation conspiracy claims against Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, Quintero, and Gramm;

(4)     Eighth Amendment deliberate indifference conspiracy claims against

1 Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos,
2 Quintero, and Gramm; and

3     Accordingly, the Court will recommend that these claims be dismissed with
4 prejudice as non-cognizable.

## I.    Screening Requirement

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Pleading Standard

    "Actions under [42 U.S.C.] § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991). Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397. To state a claim under Bivens, a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor. See Van Strum, 940 F.2d at 409.

    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

1  Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief

2  that is plausible on its face." Id. Facial plausibility demands more than the mere

3  possibility that a defendant committed misconduct and, while factual allegations are

4  accepted as true, legal conclusions are not. Id. at 677-78.

5  **III.    Plaintiff's Allegations**

6       Plaintiff presently is incarcerated at the Federal Correctional Institution—Pekin in

7  Pekin, Illinois, but complains of acts that occurred during his incarceration at the Federal

8  Correctional Institution—Mendota ("FCI—Mendota") in Mendota, California.

9       **A.    First Amended Complaint and First Screening Order**

10      In his first amended complaint, Plaintiff named the following nineteen Defendants:

11 (1) the United States of America (for FTCA claim only); (2) Dr. Harjeet Ghotra, DDS; (3)

12 Dr. Adel Awad, MD, (4) Dr. Caleb Querol, MD and Clinical Director ("CD"); (5) Angela

13 Ramsey, RN; (6) Noelia Rivera, RN; (7) Mr. Mendoza, RN; (8) C. Castaneda, Dental

14 Assistant; (9) J. Cisneros, Federal Correctional Officer ("FCO"); (10) Pavey, FCO; (11) A.

15 Lozano, FCO; (12) Saenz, FCO; (13) R. Quintero, Correctional Counselor; (14) B. Amos,

16 Unit Manager; (15) D. Perez, DHO; (16) C. Marlow, Lieutenant; (17) D. Gramm, Captain;

17 (18) S. Lake, Assistant Warden; and (19) A. Gill, Warden.

18      Plaintiff pursued claims for First Amendment retaliation, Eighth Amendment

19 medical indifference, Conspiracy, Fourteenth Amendment due process violations, and

20 tort actions under the FTCA. (ECF No. 10.)

21      In the initial screening order, the Court recognized cognizable claims for Eighth

22 Amendment deliberate indifference against Defendants Ghotra, Awad, Rivera, Mendoza,

23 Lake, Lozano, Marlow, Cisneros, Amos, and Gramm. The Court determined that all other

24 claims were not cognizable as pled. (ECF No. 12.) However, Plaintiff was granted leave

25 to amend.

26      **B.    Second Amended Complaint**

27      Plaintiff now pursues claims against only Defendants United States of America,

28 Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, Gramm, and

4

1    Quintero.

2        Plaintiff presents three causes of action; however, it appears that what he labels

3    as "Claim 2" actually consists of two separate causes of action. The Court will refer to

4    them as numbers (2) and (3) below. The claims are summarized as follows:

5        (1)    Defendant United States of America, by and through the deliberate

6    indifference and direct medical malpractice of its federal employees, violated Plaintiff's

7    Eighth Amendment right [to be] protected under the U.S. Constitution and proximately

8    caused the claimed right violations here." (ECF No. 21 at 3.)

9        (2)    Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow,

10   Cisneros, Amos, Gramm, and Quintero were deliberately indifferent to Plaintiff's serious

11   medical needs in violation of the Eighth Amendment. (Id. at 5.)

12       (3)    Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow,

13   Cisneros, Amos, Gramm, and Quintero retaliated against Plaintiff in violation of his First

14   Amendment rights. (Id.)

15       (4)    Defendant United States of America is liable to Plaintiff for negligence and

16   malpractice under the FTCA. (Id. at 29-31.)

17       Plaintiff's factual allegations in the second amended complaint can be

18   summarized as follows:

19       On February 14, 2016, Defendant Dr. Ghotra examined Plaintiff for a complaint of

20   tooth pain radiating from the lower left side of his mouth. It was determined that the

21   cause was either tooth #18 or #19. Dr. Ghotra, without thoroughly examining Plaintiff or

22   X-raying the affected area, recommended extraction of tooth #18. She stated that

23   Defendant Dr. Querol would not permit her to incur the expense of an X-ray. Plaintiff

24   expressed concern about extracting tooth #18 without being certain it was the cause of

25   his symptoms. He asked for alternatives. Dr. Ghotra responded that even if the tooth

26   could be fixed she would not fix it, and that only extraction would stop the pain. Plaintiff

27   protested, to which Dr. Ghotra replied, "I am not going to waste my time with you! Do you

28   want me to extract your tooth, yes or no?" Plaintiff said no and left without treatment.

On February 25, 2014, Plaintiff returned to sick call with the same tooth pain. Plaintiff asked Dr. Ghotra to thoroughly examine him to ensure tooth #18 was the source of his pain. She again refused to X-ray Plaintiff's mouth, stating it would cost too much. Having no other choice, Plaintiff had Defendant proceed to extract tooth #18. It turned out it was not the tooth causing pain.

On February 28, 2014, Plaintiff again returned to sick call with extreme tooth pain and fever. He could not sleep or eat due to the pain. Plaintiff requested antibiotics because he had been running a fever and wanted to prevent infection. He also asked for pain medication. Dr. Ghotra examined Plaintiff's mouth and told him that "the extraction site was healing [within] normal limits." She refused to address Plaintiff's pain and refused to provide pain medication or antibiotics. Plaintiff told Dr. Ghotra that he believed the pain came from tooth #19. Dr. Ghotra told Plaintiff to take ibuprofen. Plaintiff purchased ibuprofen from the commissary, It did not help his pain.

On March 3, 2014 Plaintiff asked his housing unit officer to call medical because he still experienced tooth pain. Plaintiff was sent to the medical department as an emergency patient. Plaintiff waited for twenty minutes sweating in visible pain. Former Defendant C. Castaneda, a dental assistant, finally came to see Plaintiff. Plaintiff told her, "I'm in pain. [Dr. Ghotra] pulled the wrong tooth." Mrs. Castaneda said that she could not see Plaintiff until the unit officer personally called her. Plaintiff protested, but Mrs. Castaneda refused and sent Plaintiff back to his unit without treating him or allowing him to see a doctor.

Plaintiff returned to his unit and asked his unit officer to personally call Mrs. Castaneda. Castaneda told Plaintiff, via the officer, to wait an hour until the next prison move and then come back to medical. When Plaintiff returned to the clinic after an hour, he was seen by Dr. Ghotra. He told her about the fever, sweating, and pain, and that over-the-counter medication did not help. He again requested antibiotics and repeated that Dr. Ghotra had pulled the wrong tooth. Dr. Ghotra told Plaintiff to use warm saline rinses and ibuprofen and return if his fever did not go down in a day or two. Plaintiff said,

"[Y]ou pulled the wrong tooth, I know you did by the pain." Dr. Ghotra screamed, "Get out Mr. Mendez."

Later that same day (March 3, 2014), Plaintiff was sent to the medical department for a third time because of his severe tooth pain. This time, Plaintiff was seen by Former Defendant Nurse Ramsey. Plaintiff described his pain as a "10" on the pain scale. He requested antibiotics and stronger pain medication. Nurse Ramsey refused to prescribe any medication, refused to call a dentist, and sent Plaintiff back to his unit without treatment.

While waiting to be moved back to his unit, Plaintiff sat on the bench in the waiting area of the medical department groaning in pain. Nurse Ramsey reported Plaintiff for insolence. Defendant Marlow, a Lieutenant, arrived. Plaintiff tried to explain that he was in pain. Lt. Marlow said, "[Y]ou and your pain could cry and moan in the hole." Plaintiff was sent to the segregated housing unit ("SHU").

When Plaintiff arrived in the SHU, Defendant Officer Cisneros performed the intake "shake down." He refused to allow Plaintiff to have any pain medications in the SHU, even though SHU inmates are permitted to have medications. Plaintiff explained that he needed ibuprofen for his tooth pain, and that it was prescribed to him by Dr. Ghotra. Officer Cisneros said, "Shut the fuck up! I don't give a fuck about policy or your damn pain."

Plaintiff activated the institutional duress alarm multiple times while in the SHU. Eventually, Nurse Ramsey arrived and gave Plaintiff three ibuprofen pills, which Officer Cisneros "took." Nurse Ramsey also told Plaintiff that Defendant Dr. Awad would be seeing him that day. A few hours later, Plaintiff asked Officer Cisneros to call the medical department for pain pills. Officer Cisneros refused. Officer Cisneros said to Plaintiff, "Fuck with the doc and you get no pain meds." Later that night, Plaintiff also asked Lt. Marlow to call the medical department, but was met with laughter. Lt. Marlow told Plaintiff, "Fuck with the doctor you get nothing, trust me you will find out."

On March 4, 2014 at approximately 6:00 am, Plaintiff asked Defendants Lozano,

Pavey, and Saenz (all officers staffing the SHU) if he could see a dentist or doctor for his severe tooth pain. He complained that he could not eat or sleep and was crying because the pain was so great. All three repeated the words of Officer Cisneros and Lt. Marlow: "Fuck with the [doctor] and you get no pain meds." At approximately 7:00 am, Plaintiff activated the duress alarm. Officers Lozano, Pavey, and Saenz told Plaintiff to stop activating the alarm. When Plaintiff activated it again at 8:00 am, Lozano, Pavey, and Saenz moved Plaintiff to a holding cell where he could not activate the alarm. These three defendants left Plaintiff in the holding cell without any medical treatment and continually "mocked and ridiculed" Plaintiff.

At around 9:00 am that same day, Defendant Nurse Rivera came to see Plaintiff in the holding cell. Plaintiff complained that he could not eat or sleep. She replied, "[Yeah, yeah] Dr. Ghotra pulled the wrong tooth. We know your complaint." Plaintiff told Nurse Rivera that Dr. Awad never came to see him the prior day. He also stated he had a fever. Without conducting a physical examination of Plaintiff, Nurse Rivera told him he was "fine," that Dr. Ghotra said there was no infection. Plaintiff asked Nurse Rivera to take his temperature. She replied, "Get Dr. Ghotra to take your temp. You seem to like to harass Dr. Ghotra, see what it gets you." She also told Plaintiff to just get aspirin from the commissary and file sick call slips to the dental department.

Immediately, Plaintiff sent an emergency request form to Defendant A. Gill, the Warden of FCI—Mendota, and another to Dr. Ghotra regarding his steadily worsening tooth pain. Later that day, Plaintiff activated the duress alarm. Defendant Lozano responded. Plaintiff asked to see Dr. Ghotra or an oral surgeon so he could have the correct tooth extracted. Lozano told Plaintiff to follow the instructions given to him by Nurse Rivera. Plaintiff explained that he was instructed to buy medication from the commissary, which he could not access for a week, and that he did not have any medication left. Lozano replied, "I'm not the one fucking with them, I don't want this shit" and walked away. That same day, Lt. Marlow issued Plaintiff incident reports written by Lozano for Interfering with a Security Device and Interfering with Staff Member Duties.

On March 5, 2014, at around 8:00 am, Defendant Captain Gramm conducted his routine observation of the inmates in the SHU. Plaintiff again requested treatment for his tooth pain. Captain Gramm replied, "I'm not going to do a thing for you! And you know why!" At some point, Captain Gramm personally called Plaintiff into his office and told his to stop filing grievances "or else." Captain Gramm also brought members of the Paisas prison gang in to tell Plaintiff to stop filing grievances, even though Plaintiff is not a member of that or any prison gang.

While Plaintiff was in the SHU, Defendant Nurse Mendoza repeatedly told Plaintiff that he could not help, even though he confirmed that Plaintiff had a fever. He also said to Plaintiff, "You pissed off Medical we all know Dr. Ghotra pulled the wrong tooth but no one wants to help you as it would prove Dr. Ghotra is a 3[rd] rate dentist."

At 1:40 pm on March 5, 2014, Plaintiff was finally taken to the prison dental office, where he was seen by Drs. Ghotra and Awad. Dr. Awad told Plaintiff, "I am here as you have been raising hell that Dr. Ghotra pulled the wrong tooth because she would not use the proper X-ray. Let me tell you something Mr. Mendez, we are the Doctors not you." Plaintiff protested that he had a fever, which he feared was a sign of infection, and he begged the doctors to take his temperature or refer him to an oral surgeon. Dr. Awad replied, "No. What I'll do is refer to Dr. Ghotra and she says [you're] healing well from your extraction." Plaintiff asked about his fever and pain. Both doctors told Plaintiff to "buy pills off commissary."

On March 7, 2014, former Defendant Warden Gill conducted her routine observation of inmates in the SHU. Plaintiff explained his dental issues to the Warden and stated that Dr. Ghotra refused to extract the tooth that actually caused Plaintiff's pain. Gill replied, "If you want to get medical treatment or pain medication, you need to file a BP-8 (Informal Resolution Request)." Plaintiff asked why Warden Gill had not responded to his March 4, 2014 emergency request. Warden Gill told Plaintiff that he would need to speak to the Assistant Warden, Defendant Lake, because she (Warden Gill) could not do anything. When Plaintiff did finally speak to Lake, Lake looked Plaintiff

in the face and said, "I would think by now you would of shut-up, you're not going to the outside Dentist. You are going to sit here in pain until I can get you out of my hair."

On March 9, 2014, Plaintiff sent a request for medical treatment to Dr. Ghotra. She never responded. On March 10, 2014, Plaintiff sent another request (it is not clear what, if anything, Dr. Ghotra said in response).

Also on March 10, 2014, Plaintiff filled out a BP-8 regarding the lack of treatment for his tooth pain. He submitted it to Defendant Ben Amos, the Unit Manager who oversees all Unit programs and activities. Plaintiff was scheduled for an appointment on March 15, 2014, however the appointment never took place. Instead, Defendant Amos said, "Mr. Mendez you know that we are not good friends, you know why, so, why you ask me for help? Take care yourself," and walked away, saying "Fuck with the doc."

On March 12, 2014, Plaintiff submitted another request for medical care to Dr. Ghotra. She did not respond. The same day, Plaintiff sent another emergency request to Warden Gill; the Warden did not respond until two weeks later (March 25, 2014).

On March 22, 2014, Plaintiff was taken to see Dr. Ghotra. She informed Plaintiff that he had a "high spot" on tooth #19, which was the cause of Plaintiff's pain. She ground down the tooth in an effort to "fix" the tooth. Plaintiff asked if he could be sent to a specialist. Dr. Ghotra replied, "I can't send you. If I could I would already [have] done so." She also said she could not extract tooth #19 "even if [she] wanted to."

On March 25, 2014, Plaintiff submitted an administrative appeal regarding the lack of treatment for his tooth pain. It was rejected on July 18, 2014 by Warden Gill.

On April 2, 2014, Defendants Gill and Amos transferred Plaintiff to the United States Penitentiary ("USP") in Victorville, California. They did not provide Plaintiff medical treatment prior to the transfer.

On April 9, 2014, Plaintiff was seen by Dr. James Hicks, a dentist at the USP, who performed an X-ray and determined that tooth #19 was indeed abscessed and had to be extracted. He prescribed Plaintiff penicillin to treat his infection and ibuprofen to treat the pain. Dr. Veronica Brown, another dentist, eventually extracted tooth #19.

10

IV.     **Analysis**

A.      **Deliberate Indifference to Serious Medical Needs**

1.      **Legal Standard**

For Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014) (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

The second element of an Eighth Amendment claim is subjective deliberate indifference, which involves two parts. Lemire, 726 F.3d at 1078. Plaintiff must demonstrate first that the risk to his health from Defendants' acts or omissions was obvious or that Defendants were aware of the substantial risk to his health, and second that there was no reasonable justification for exposing him to that risk.  Id. (citing Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation marks omitted). There must be some causal connection between the actions or omissions of each named defendant and the violation at issue; liability may not be imposed under a theory of *respondeat superior*.  Iqbal, 556 U.S. at 676-77; Lemire, 726 F.3d at 1074-75; Lacey v. Maricopa County, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

As previously found (ECF No. 11), Plaintiff's allegations suffice to establish a serious medical need. The Court previously found cognizable claims for deliberate

indifference against Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, and Gramm. (Id.) The Court restates that conclusion here, as Plaintiff's factual allegations against these Defendants remains the same. Furthermore, the Court finds that plaintiff's claims against Defendant Quintero represent a cognizable Eighth Amendment violation.

### 2. Conspiracy

Plaintiff alleges generally that all eleven individual Defendants "conspired" to violate his Eighth Amendment rights.

As the Court stated in the first screening order (ECF No. 11 at 18-19), a conspiracy claim brought under Section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the Court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. (internal quotations and citations omitted).

As in the first amended complaint, Plaintiff does not provide more than labels and

12

conclusions concerning his conspiracy allegations. Plaintiff's conclusion that his inadequate medical care at the hands of each individual Defendant must be the result of a common conspiracy is insufficient to state a claim for conspiracy. This bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Accordingly, this claim should be dismissed with prejudice.

### 3.    Defendants Ghotra

Dr. Ghotra was involved in Plaintiff's treatment from the first. According to Plaintiff, she outright refused to order X-rays because of the cost, arbitrarily extracted the wrong tooth without confirming that it was the source of Plaintiff's pain, and refused to prescribe appropriate medications to treat Plaintiff's pain and possible infection. Despite being notified on multiple occasions of Plaintiff's ongoing pain and the possibility that the wrong tooth had been extracted, Dr. Ghotra failed to investigate the cause of Plaintiff's pain further or prescribe adequate pain medications.  These allegations are sufficient to state a claim against Dr. Ghotra.

### 4.    Defendant Awad

Plaintiff complains that Dr. Awad was supposed to examine Plaintiff in the SHU on March 3, 2014, but never turned up.  Plaintiff provides no further information. The Court cannot conclude based on these limited facts that Dr. Awad's failure to be present reflected deliberate indifference rather than something totally innocent and/or totally beyond Dr. Awad's control. Plaintiff will be given leave to amend that aspect of his claim.

However, Plaintiff also reports that on March 5, 2014, Plaintiff went to an appointment with both Dr. Ghotra and Dr. Awad. Dr. Awad stated he was there because Plaintiff kept "raising hell," then outright ignored Plaintiff's complaints of extreme pain and possible infection, and refused to conduct an independent examination. These allegations are sufficient to state a medical indifference claim against Dr. Awad.

### 5.    Defendant Rivera

When seeing Plaintiff in SHU, Defendant Rivera, without conducting an

13

examination, told Plaintiff he was "fine", refused to take his temperature, and would not prescribe Plaintiff any pain medication. These allegations suffice to state a claim for medical indifference.

### 6. Defendant Mendoza

When seeing Plaintiff in the SHU, Defendant Mendoza told Plaintiff he would not treat him because he did not want to go against Dr. Ghotra. These allegations are sufficient to state a claim against Defendant Mendoza for indifference to Plaintiff's serious medical needs.

### 7. Defendant Lake

Plaintiff states that when he spoke to Defendant Lake about his medical treatment, Defendant Lake responded "you are going to sit here in pain until I get you out of my hair." These allegations are sufficient to state a medical indifference claim against Defendant Lake.

### 8. Defendant Lozano

Plaintiff avers that after Defendant Nurse Rivera left, Plaintiff spoke to Defendant Lozano again and explained that he still needed pain medication. He asked Defendant Lozano several times to call medical, to which Defendant Lozano replied, "No!" and issued Plaintiff an incident report for Interfering with Staff Duties. These allegations suffice to state a claim for medical indifference against Defendant Lozano.

### 9. Defendant Marlow

Defendant Lt. Marlow responded to Nurse Ramsey's report of Plaintiff's insolence. When Plaintiff complained that he was in pain, Defendant Marlow said he could "cry and moan in the hole" and sent Plaintiff to the SHU. Later, when Plaintiff continued to complain of pain, Defendant Marlow told him he would get no medication and Plaintiff spent the night without medication. These allegations are sufficient to state a claim for medical indifference.

### 10. Defendant Cisneros

Defendant Officer Cisneros refused to allow Plaintiff to possess over-the-counter

pain medication in the SHU, even though prison policy allows otherwise. When Nurse Ramsey gave Plaintiff three ibuprofen, Defendant Cisneros "took" them. When Plaintiff asked him to call the medical department for more medication, Defendant Cisneros refused.

Assuming Plaintiff means Defendant Cisneros wrongfully confiscated his ibuprofen pills, the Court finds these allegations sufficient to state a medical indifference claim against Defendant Cisneros.

### 11.    Defendant Amos

Plaintiff requested Defendant Amos intervene on his behalf to help Plaintiff obtain medical treatment for his tooth pain. As Unit Manager, Defendant Amos oversaw all Unit programs and activities. In response, Defendant Amos said he would not help because he and Plaintiff were "not good friends." These allegations are sufficient to state a claim for medical indifference.

### 12.    Defendant Gramm

While Plaintiff was housed in the SHU, he personally asked Defendant Captain Gramm to help him obtain medical treatment. Defendant Gramm refused, and told Plaintiff to stop making complaints. These allegations are sufficient to state a claim for medical indifference.

### 13.    Defendant Quintero

Plaintiff alleges that on March 6, 2014, Defendant Quintero conducted a Unit Disciplinary Hearing for the incident reports issued by Defendants Ramsey and Lozano. Plaintiff tried to explain that he was in pain and simply trying to obtain treatment. Quintero said, "I am not here for that and I do not care about your problems. I've heard that wrong tooth pulled shit. You were guilty before I entered the room, so save it." He followed up with, "The Captain tried to get you to stop the complaints . . . [t]he sad thing is most of us believe you that she pulled the wrong tooth, but [you're] shit out of luck now." (ECF No. 21 at 27.)

In the previous screening order, the Court rejected Plaintiff's claim because it did

not specify how Defendant Quintero was responsible for Plaintiff's medical care. (ECF No. 11.) Plaintiff asserts in the second amended complaint that Defendant Quintero is the "Unit Correctional Counselor" and therefore has the "responsibility to provide counseling and guidelines to inmates of the unit in areas of institutional adjustment, personal difficulties, and plans for the future." (ECF No. 21 at 27.)

Plaintiff asserts that Defendant Quintero's actions were in dereliction of his duty in this regard and denied plaintiff of his right to medical care for his serious medical needs. (Id.) The Court finds Plaintiff's allegations sufficient to state a claim for deliberate indifference.

## B.   First Amendment Retaliation

### 1.   Legal Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a grievance is a protected action under the

First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

## 2. Analysis

Plaintiff's claims for retaliation in the first amended complaint were dismissed as being too general. It was unclear whether Plaintiff's complaints were written or verbal, how and when they were communicated to each individual Defendant, how each individual Defendant responded to the complaint or complaints directed to him or her, and when each adverse action occurred in relation to each said complaint. Instead, Plaintiff alleged, or at least implied, that he made complaints, that all eighteen individual Defendants were made aware of them, and that all took adverse action against him because of the complaints. (ECF No. 11.)

In the second amended complaint, Plaintiff makes general allegations against the eleven individual Defendants, alleging that they "conspired" to retaliate against him for filing grievances (ECF No. 21 at 5), however, he also makes specific allegations concerning retaliation against each Defendant, which the Court will address in turn below.

## 1. Conspiracy to Retaliate

As the Court stated in the first screening order (ECF No. 11 at 18-19), a

conspiracy claim brought under Section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the Court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).  A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. (internal quotations and citations omitted).

As in the first amended complaint, Plaintiff does not provide more than labels and conclusions concerning his conspiracy allegations. Plaintiff's conclusion that his care at the hands of each individual Defendant must be the result of a common conspiracy to retaliate is insufficient to state a claim for conspiracy. This bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Accordingly, this claim should be dismissed with prejudice.

### 2.    Defendants Ghotra

While Plaintiff includes Defendant Ghotra in his allegations concerning the general "conspiracy" to commit retaliation, he makes no specific allegations concerning

actions taken by Defendant Ghotra as retaliation against him for exercising his First Amendment rights. (See ECF No. 21 at 5-10.)

As the Court explained in the previous screening order: "it is unclear . . . how and when [Plaintiff's complaints] were communicated to . . . Defendant [Ghotra], how [Defendant Ghotra] responded to the complaint or complaints directed to . . . her, and when each adverse action occurred in relation to each said complaint." While Plaintiff raises numerous issues over Defendant Ghotra's medical care, he does not provide the necessary fcts for a retaliation claim.

Accordingly, this claim should be dismissed with prejudice.

### 3.    Defendant Awad

Similarly, in his claims against Defendant Awad (ECF No. 21 at 20-22), Plaintiff fails to make specific allegations concerning retaliation. Plaintiff does not claim that he undertook a protected act, or that Defendant Awad took an adverse action against him because of the act. (Id.)

Accordingly, this claim should be dismissed with prejudice.

### 4.    Defendant Rivera

In his claims against Defendant Rivera (ECF No. 21 at 15-17), Plaintiff fails to make specific allegations concerning retaliation. Plaintiff does not claim that he undertook a protected act, or that Defendant Rivera took an adverse action against him because of the act. (Id.)

Accordingly, this claim should be dismissed with prejudice.

### 5.    Defendant Mendoza

In his claims against Defendant Mendoza (ECF No. 21 at 25), Plaintiff fails to make specific allegations concerning retaliation. Plaintiff does not claim that he undertook a protected act, or that Defendant Mendoza took an adverse action against him because of the act. (Id.)

Accordingly, this claim should be dismissed with prejudice.

### 6.    Defendant Lake

19

In his allegations against Defendant Lake, Plaintiff avers that Lake's actions in denying him adequate medical care was "in retaliation for Plaintiff's numerous complaints against prison officials and medical personnel." (ECF No. 21 at 26.) Such a conclusory allegation is inadequate to state a claim for retaliation. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (conclusory allegations of retaliatory motive insufficient); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985) (to state a claim for retaliation, defendant's conduct must infringe on plaintiff's protected activity). Plaintiff's factually-unsupported allegation that the actions of Defendant Lake were retaliatory is not enough to present a cognizable claim for a First Amendment violation.

### 7. Defendant Lozano

In his claims against Defendant Lozano (ECF No. 21 at 13-15; 17-18), Plaintiff fails to make specific allegations that he undertook a protected act. While Plaintiff alleges that he requested medical attention from Defendant Lozano (id. at 18), he does not allege that he engaged in any activity protected by the First Amendment. Specifically, he alleges that he "begged" Defendant Lozano personally for medical assistance, but that "instead of medical treatment," Defendant Marlow slid an incident report under Plaintiff's cell door written by Defendant Lozano. (Id.) The act of seeking medical treatment is not a "protected act;" Plaintiff was not engaged in reporting Defendant Lozano for some wrongdoing, nor exercising his free speech rights in any way in requesting medical assistance from Defendant Lozano.

Accordingly, this claim should be dismissed with prejudice.

### 8. Defendant Marlow

Plaintiff states a cognizable claim for retaliation against Defendant Marlow. Specifically, Plaintiff alleges that Defendant Marlow refused to respond to Plaintiff's complaints of severe pain. Instead, Defendant Marlow told plaintiff "Fuck with the doctor, you get nothing, trust me you will find out." (Id. at 11.) Plaintiff alleges that he submitted numerous grievances against Defendant Dr. Ghotra, as well as against Defendant Marlow personally. (Id.) These allegations suffice to state a cognizable claim for

1  retaliation.

2  ### 9.  Defendant Cisneros

3  Plaintiff alleges that after he filed complaints about Defendant Dr. Ghotra,
4  defendant Cisneros took his pain medication. (Id. at 12.) Furthermore, Defendant
5  Cisneros specifically told him "Fuck with the doc and you get no pain meds." (Id. at 13.)
6  The Court finds these allegations sufficient to state a claim for retaliation.

7  ### 10.  Defendant Amos

8  Plaintiff requested Defendant Amos intervene on his behalf to help Plaintiff obtain
9  medical treatment for his tooth pain. As Unit Manager, Defendant Amos oversaw all Unit
10 programs and activities. In response, Defendant Amos said he would not help because
11 he and Plaintiff were "not good friends." Furthermore, Plaintiff alleges that Defendant
12 Amos attempted to transfer Plaintiff to a facility thousands of miles from Plaintiff's family
13 because Plaintiff filed grievances against numerous members of Defendant Amos' Unit
14 about his inadequate medical treatment. (Id  at 23-25.)

15 These allegations are sufficient to state a claim for retaliation.

16 ### 11.  Defendant Gramm

17 Plaintiff alleges that Defendant Gramm did not respond to his medical complaints
18 because Plaintiff filed several grievances of "staff misconduct" against Defendant
19 Gramm's lieutenants, as well as several officers under Defendant Gramm's immediate
20 supervision. (Id. at 19.) Plaintiff alleges that Defendant Gramm was responsible for the
21 supervision of correctional officers and their compliance with institutional procedures.
22 (Id.) Furthermore, Plaintiff claims that Defendant Gramm told him to "stop using the
23 administrative remedy process against [my] staff misconduct." (Id.)

24 The Court finds these allegations sufficient to state a claim for retaliation.

25 ### 12.  Defendant Quintero

26 Plaintiff alleges that on March 6, 2014, Defendant Quintero conducted a Unit
27 Disciplinary Hearing for the incident reports issued by Defendants Ramsey and Lozano.
28 Plaintiff tried to explain that he was in pain and simply trying to obtain treatment.

Quintero said, "I am not here for that and I do not care about your problems. I've heard that wrong tooth pulled shit. You were guilty before I entered the room, so save it." He followed up with, "The Captain tried to get you to stop the complaints . . . [t]he sad thing is most of us believe you that she pulled the wrong tooth, but [you're] shit out of luck now." (ECF No. 21 at 27.) Plaintiff alleges that Defendant Quintero ruled against him concerning the incident reports in retaliation for Plaintiff's numerous complaints filed against Defendant Quintero, Defendant Marlow, and Defendant Amos. (Id. at 28.) Plaintiff also alleges that he "begged" Defendant Quintero for medical attention, but that Defendant Quintero refused to act in retaliation for the complaints Plaintiff had previously filed. (Id.)

These allegations are sufficient to state a claim for retaliation.

### C. Claims against Defendant United States of America

#### 1. First and Eighth Amendment Claims

Plaintiff's first claim against the United States of America seeks relief directly against the federal government for violations of his First and Eighth Amendment rights. Specifically, Plaintiff alleges that the United States is liable for the actions of individual Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, and Gramm. (ECF No. 21 at 3.)

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Loeffler v. Frank, 486 U.S. 549, 554 (1988); Federal Housing Administration v. Burr, 309 U.S. 242, 244 (1940). Sovereign immunity is jurisdictional in nature. Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941). See also United States v. Mitchell, 463 U.S. 206, 212 (1983) "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

Bivens "does not provide a means of cutting through the sovereign immunity of the United States itself." Arnsberg v. United States, 757 F.2d 971, 980 (9th Cir. 1984);

see also Pereira v. U.S. Postal Serv., 964 F.2d 873, 876 (9th Cir. 1992); Clemente v. United States, 766 F.2d 1358, 1363 (9th Cir. 1985) ("We cannot accept . . . that Bivens . . . logically compel[s] the United States to be held liable in damages for the constitutional torts of its officers.").

Accordingly, Plaintiff cannot maintain his Eighth and First Amendment claims against Defendant United States of America in this action. As discussed below, the Federal Tort Claims Act is the avenue through which one may sue the federal government, as the FTCA waives sovereign immunity for certain torts committed by federal employees. See 28 U.S.C. §§ 1346(b), 2671–2680.

Accordingly, these claims should be dismissed with prejudice as non-cognizable.

### 2. Federal Tort Claims Act

#### a. Legal Standard

The FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, waives the sovereign immunity of the United States for certain torts committed by federal employees. FDIC v. Meyer, 510 U.S. 471 (1994). The FTCA provides that district courts have exclusive jurisdiction over civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the federal government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b)(1). The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674.

The United States is the only proper defendant in a suit brought pursuant to the FTCA. FDIC v. Craft, 157 F.3d 697, 706 (9th Cir. 1998); Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998). "A claim against [a federal agency] in its own name is not a claim against the United States." Kennedy, 145 F.3d at 1078. Nor is an agency a proper defendant under the FTCA. Craft, 157 F.3d at 706 (citing Shelton v. United States Customs Serv., 565 F.2d 1140, 1141 (9th Cir. 1977)).

Under the FTCA a claim must be filed with the appropriate federal agency within two years of its accrual and suit must be commenced within six months of the agency's

denial of the claim. 28 U.S.C. § 2401(b). This administrative exhaustion requirement is mandatory and jurisdictional. McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Exhaustion must be affirmatively alleged in the complaint. Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980).

California law controls the substantive elements of a tort claim under the FTCA. See 28 U.S.C. § 1346(b)(1); Delta Sav. Bank v. U.S., 265 F.3d 1017, 1025 (9th Cir. 2001). Under California law, a public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d).

The elements of negligence under California law are: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 70 Cal. Rptr. 3d 519 (2008)).

To establish medical malpractice, a plaintiff must state all of the following: (1) that the defendant was negligent; (2) that the plaintiff was harmed; and (3) that the defendant's negligence was a substantial factor in causing the plaintiff's harm. Ladd v. Cty. of San Mateo, 12 Cal. 4th 913, 917 (1996). "The standard of care in a medical malpractice case requires that medical service providers exercise that . . . degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal. 4th 101, 108 (Cal. 1999); Landeros v. Flood, 17 Cal. 3d. 399, 408 (1976).

### b. Analysis

In the original screening order, the Court dismissed Plaintiff's FTCA claim on the basis that it was not enough for Plaintiff to simply rely on the allegations underlying his Bivens claims to establish the elements of the substantive torts underlying his FTCA

24

claim. (ECF No. 11 at 21.) Plaintiff was instructed that his amended complaint must clarify whether his FTCA claim is based on simple negligence, medical malpractice, or both, explicitly setting forth the factual allegations that would support the elements of these claims. (Id.)

In the original screening order, Plaintiff was instructed to clarify in his amended complaint whether his FTCA claim is based on simple negligence, medical malpractice, or both. (ECF No. 11 at 21.) Plaintiff's second amended complaint pursues both medical malpractice and negligence. (ECF No. 21 at 31.) Plaintiff also outlines his efforts to exhaust the FTCA claims, as well as the elements of FTCA claims for negligence and medical malpractice. (Id. at 29-31.)

The FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, waives the sovereign immunity of the United States for certain torts committed by federal employees. FDIC v. Meyer, 510 U.S. 471 (1994). The FTCA provides that district courts have exclusive jurisdiction over civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the federal government while acting within the scope of his office or employment. 28 U.S.C. § 1346(b)(1). The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674.

The United States is the only proper defendant in a suit brought pursuant to the FTCA. FDIC v. Craft, 157 F.3d 697, 706 (9th Cir. 1998); Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998). "A claim against [a federal agency] in its own name is not a claim against the United States." Kennedy, 145 F.3d at 1078. Nor is an agency a proper defendant under the FTCA. Craft, 157 F.3d at 706 (citing Shelton v. United States Customs Serv., 565 F.2d 1140, 1141 (9th Cir. 1977)).

Under the FTCA a claim must be filed with the appropriate federal agency within two years of its accrual and suit must be commenced within six months of the agency's denial of the claim. 28 U.S.C. § 2401(b). This administrative exhaustion requirement is mandatory and jurisdictional. McNeil v. United States, 508 U.S. 106, 113 (1993) ("The

FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Exhaustion must be affirmatively alleged in the complaint. Gillespie v. Civiletti, 629 F.2d 637, 640 (9th Cir. 1980).

California law controls the substantive elements of a tort claim under the FTCA. See 28 U.S.C. § 1346(b)(1); Delta Sav. Bank v. U.S., 265 F.3d 1017, 1025 (9th Cir. 2001). Under California law, a public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d).

The elements of negligence under California law are: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 70 Cal. Rptr. 3d 519 (2008)).

To establish medical malpractice, a plaintiff must state all of the following: (1) that the defendant was negligent; (2) that the plaintiff was harmed; and (3) that the defendant's negligence was a substantial factor in causing the plaintiff's harm. Ladd v. Cty. of San Mateo, 12 Cal. 4th 913, 917 (1996). "The standard of care in a medical malpractice case requires that medical service providers exercise that . . . degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal. 4th 101, 108 (Cal. 1999); Landeros v. Flood, 17 Cal. 3d. 399, 408 (1976).

Here, Plaintiff alleges he has exhausted the administrative requirements for his FTCA claim and he names the United States as a Defendant. Plaintiff states that he is pursuing claims for medical malpractice and negligence against the United States for the actions of its employees, Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, Quintero, and Gramm. As the Court found above, Plaintiff has stated claims for deliberate indifference to a serious medical need against each of these

individual Defendants. (See supra at 11-16.) A claim for deliberate indifference entails more than ordinary lack of due care. See Snow, 681 F.3d at 985; Wilhelm, 680 F.3d at 1122. Accordingly, those same deliberate indifference allegations also establish cognizable claims for negligence concerning the actions of non-medical professionals, see Corales, 567 F.3d at 572, and medical malpractice concerning the negligence of medical professionals, see Ladd, 12 Cal. 4th at 917.

## V.     Conclusion and Recommendations

Plaintiff's second amended complaint states the following cognizable claims:

(1)     Eighth Amendment deliberate indifference claims against Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, Quintero, and Gramm;

(2)     First Amendment retaliation claims against Defendants Quintero, Gramm, Amos, Cisneros, and Marlow; and

(3)     FTCA medical malpractice and negligence claims against the United States of America.

However, the remaining claims are not cognizable as pled.

Accordingly, IT IS HEREBY RECOMMENDED that:

(1)     Plaintiff's case proceed on the following cognizable claims:

(a)     Eighth Amendment deliberate indifference claims against Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, Quintero, and Gramm; and

(b)     First Amendment retaliation claims against Defendants Quintero, Gramm, Amos, Cisneros, and Marlow;

(2)     Plaintiff's following non-cognizable be dismissed with prejudice:

(a)     First and Eighth Amendment claims against Defendant United States of America through the actions of its employees, Defendants Ghotra, Awad, Rivera, Mendoza, Lake, Lozano, Marlow, Cisneros, Amos, Quintero, and Gramm;

(b)     First Amendment retaliation claims against Defendants Lozano,

Lake, Mendoza, Rivera, Awad, and Ghotra.

(3)     The Clerk of the Court send eleven USM-285 forms, eleven summonses, a Notice of Submission of Documents form, an instruction sheet, and a copy of the second amended complaint, filed November 27, 2017 (ECF No. 21);

(4)     Within thirty (30) days of the order adopting these recommendations, Plaintiff complete the Notice of Submission of Documents and submit the completed Notice to the Court with the following documents:

a.     One completed summons for each Defendant;

b.     One completed USM-285 form for each Defendant; and

c.     Twelve copies of the second amended complaint filed November 27, 2017; and

(5)     Plaintiff not attempt service on Defendants and not request waiver of service. Upon receipt of the above-described documents, the Court will direct the United States Marshal to serve the above-named Defendants pursuant to Fed. R. Civ. P. 4 without payment of costs.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   April 9, 2018        /s/ *Michael J. Seng*
                              UNITED STATES MAGISTRATE JUDGE